UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

In re:

    HENRY THOMAS, JR.,                                  Chapter 7

                                                       Case No. 06-22557 (ASH)

                           Debtor.

-------------------------------------------------------------X

**A P P E A R A N C E S:**

Henry Thomas, Jr.
Debtor Pro Se
**Marina address per Ex. M of Robbins' Motion:**
One Town Dock Road,
New Rochelle, NY
**Mother's address per page 17 of Robbins' Motion:**
302 South First Avenue
city, state, and zip code (not provided)
**From the Petition**:
420 E. Martin L. King Blvd
Mt. Vernon, NY 10550

David L. Barrack, Esq.
FULBRIGHT & JAWORSKI L.L.P.
666 Fifth Avenue
New York, NY 10103
Attorney for William R. Robbins

**HONORABLE ADLAI S. HARDIN, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

## ORDER WITH MEMORANDUM

        Debtor (Henry Thomas, Jr.) ("Thomas") filed a "MOTION FOR CONTEMPT AND

SANCTIONS" against William R. Robbins essentially for effectuating entry of a judgment against

Thomas post-petition in an action in the Circuit Court for Baltimore City, Maryland.  In turn,

Robbins filed a Motion seeking "ENTRY OF AN ORDER (A) RECOGNIZING THAT FUNDS HELD IN A MARYLAND COURT'S REGISTRY ARE NOT PROPERTY OF THE ESTATE PURSUANT TO §§ 541(A) AND (D), (B) DISMISSING THE BANKRUPTCY CASE AS A BAD FAITH FILING, OR, IN THE ALTERNATIVE, (C) DETERMINING THAT THE DEBTOR HAS VIOLATED THE AUTOMATIC STAY AND ENJOINING HIM FROM FURTHER STAY VIOLATIONS, AND (D) SANCTIONING THE DEBTOR FOR SUCH BAD FAITH FILING AND STAY VIOLATIONS." The record reflects that the parties filed various responses and replies to the above-referenced motions and the Court heard oral argument.

For the reasons that follow, Thomas' motion is denied and the motion of Robbins is granted in part to the extent set forth in the Order below.

**Background**

Once upon a time Thomas and Robbins were friends. Robbins agreed to advance funds to finance contract claims brought by one of Thomas' companies, Freedom N.Y., Inc. ("Freedom NY") against the federal government. Under a set of agreements entered into by, among others, Robbins, Bankers Leasing Association, Thomas, and Freedom NY and other companies owned by Thomas (collectively referred to herein as the "Freedom Companies"), Robbins advanced monies to fund prosecution of the claims in exchange for, if the claims were successful, sharing in any recovery and being reimbursed for the funds he advanced.

On July 22, 1998 Thomas and Robbins entered into a "Letter Agreement" under which Thomas agreed to repay Robbins $75,000 for every $25,000 supplied by Robbins as personal expense money for Thomas, as long as the Freedom Companies succeeded against the federal government. On December 16, 1998 Robbins and Thomas entered into an agreement known as the "1998 Thomas/Robbins Agreement," wherein Robbins agreed to finance the cost of litigating the claims. On November 11, 1999 the parties entered into a "Cooperation

Agreement," wherein the parties recited Robbins' obligations to pay "the legal fees and costs of the development, presentation, settlement, and/or litigation of the Claims." In exchange, proceeds from any judgment against the federal government were to be distributed among several parties in the order in which they were listed. Robbins, who was listed first, was entitled to "the amount of one-sixth (1/6) of the first $21 million" of any judgment against the federal government.

On May 1, 2001 the parties entered into another agreement known as the "Private Legal Side Agreement," wherein Robbins essentially agreed to a 50% discount on Thomas' repayment of attorneys' fees, on condition that Thomas first provide Robbins with an accounting that shows that Thomas had repaid all of the out-of-pocket expenses incurred by Robbins. On May 20, 2002 Thomas entered into a written contract with Robbins (the "May 2002 Contract"), under which he agreed to pay Robbins "a $600,000 consulting fee" for the "personal time and discussions" Robbins had spent with Thomas over the previous eighteen years in connection with the Claims and the Freedom Companies.

On February 3, 2004 Robbins and Freck, a co-defendant in an action commenced by Robbins in July 2005, signed an agreement, pursuant to which Thomas opened a bank account at Community National Savings Bank in Mount Vernon, NY, for the deposit of any judgment against the federal government (the "February 3, 2004 Agreement"). The payment instructions under the February 3, 2004 Agreement were the same as those within the Cooperation Agreement, in that Robbins should have been first in line for reimbursement.

In March 2004 Freedom NY was awarded judgment for more than $5 million on its claims against the federal government. Those funds were to be disbursed in accordance with

3

the agreements among the various parties. However, Thomas did not disburse any funds to Robbins. Robbins objected.

On April 30, 2004 the Freedom Companies and Thomas commenced a lawsuit against Robbins in the Circuit Court for Baltimore City, Maryland (the "Maryland Court") to obtain a determination of the amount of the recovered funds to which Robbins was entitled (the "Thomas Action"). In their complaint, the Freedom Companies and Thomas took the position that the maximum amount of the recovered funds to which Robbins was entitled was $1,924,449. The complaint referred to Thomas only as "custodian" over this $1,924,449 and under an interpleader count, sought to deposit this amount into the Maryland Court's Registry.

On June 18, 2004 the Maryland Court issued an order granting the request of the Freedom Companies and Thomas to place $1,924,449 in the custody of the Maryland Court (the "Registry Funds").

On July 6, 2005 the Freedom Companies and Thomas filed a Notice of Voluntary Dismissal of the Thomas Action in the Maryland Court. But the $1,924,449 remained in the Maryland Court.

In July 2005 Robbins filed a four-count suit against Thomas in the Maryland Court. In November 2005 Robbins filed another complaint seeking an additional $600,000 for Thomas' breach of the May 2002 Agreement (both actions commenced by Robbins are herein collectively referred to as the "Robbins Action").

Thomas subsequently filed counterclaims against Robbins, but in May 2006 the counterclaims were dismissed because they were filed untimely.

4

On August 22, 2006 the Maryland Court in the Robbins Action issued a Memorandum Opinion granting summary judgment in favor of Robbins and determining that, among other things, Thomas had breached his fiduciary duty to Robbins by improperly withholding Robbins' share of the funds recovered from the federal government and failing "to obtain consent of all parties involved . . . before distributing the proceeds of the $5 million judgment." The Maryland Court further held that Thomas had controlled the funds as a fiduciary for Robbins, and that Thomas' fiduciary breach entitled Robbins to attorneys' fees. In its Order and Judgment dated August 22, 2006, the Maryland Court directed, among other things, payment of $2,644,868 to Robbins by Thomas based on various counts.

On September 5, 2006 Thomas filed a *pro se* petition in this Court. Thomas lists no ordinary debt or third-party consumer debt, no credit card or bank debt, no medical bills, no telephone, electric or other utility debt. Thomas lists guaranty debt and some tax debts. Thomas testified that he did not list his children or other creditors who have lent him money for his living and litigation expenses. Thomas lives on a yacht. He admitted under oath that he has no income, no job, no bank account and his expenses and costs of litigation are paid by loans from his children and other people. At the Section 341(a) meeting, the trustee directed Thomas to file amended schedules. To date, Thomas has not filed amended schedules.

After the filing of the bankruptcy petition, Robbins filed a motion in the Robbins Action to sever Thomas from the Robbins Action, and an Order for this relief was issued by the Maryland Court on September 28, 2006. Robbins also moved for a clarifying order in the Maryland Court**.** A "Clarifying Order" was signed on September 28, 2006 restating, *inter alia*, that the Robbins Action was stayed as against Thomas, and that it previously held that "Robbins

is the owner of, and is entitled to be paid, the $1,924,449 [the "Registry Fund"] currently on deposit in the Court's Registry as partial satisfaction of the Judgment reflected in the Order and Memorandum Opinion (as hereby clarified)" (the "Clarifying Order").  On November 9, 2006, Robbins, through local counsel in New Jersey, filed a certification in support of the Registration of Foreign Judgment which specifically stated "there exists no stay of enforcement of the judgment except as to defendant Henry Thomas." On December 11, 2006 the Superior Court of New Jersey entered the Clarifying Order in exactly the same form as entered by the Maryland Court. However, apparently due to a clerical error of the Superior Court of New Jersey, a judgment was entered against Thomas. The record reflects that Robbins took immediate and persistent action to correct the error.

At the Section 341(a) meeting, Thomas testified under oath that he lived on a 42-foot yacht docked at One Town Dock Road, New Rochelle, NY, but that he is staying with his mother.  However, Thomas' petition reflects a different address.  Thomas also advised the Trustee about various corporations which were transferred by Thomas to his children.

Robbins alleges that there is evidence that Thomas fraudulently conveyed the yacht to his son in January 2006 (Ex. L to Robbins' Motion).  Robbins further alleges that Thomas threatened to have the IRS execute on the Registry Funds if Robbins did not settle the Maryland litigations with him.   Robbins alleges that he rejected all such settlement offers. Robbins also alleges that the tax obligations listed in Thomas' Schedule E are obligations of Freedom NY and are approximately twenty years old.  In addition, it is alleged that on October 30, 2006 Thomas' attorney caused a tax compliance levy from the New York State Department of Taxation and Finance to be filed with the Maryland Court for taxes due in 1988.

6

**I. The Debtor cannot re-litigate facts previously determined in the Maryland Action**

Thomas claims ownership in Registry Funds on his Schedule D. In a conference call with this Court, Thomas argued that the Registry Funds were his and not the property of Freedom NY's. Thomas further claimed that the money constituting the Registry Funds was from some agreement with a bank and is not money recovered from Freedom NY from its claims against the federal government. However, Thomas' factual assertions in this case are directly contrary to his assertions in the Maryland litigations and the Maryland Court's findings of fact. As discussed below, under collateral estoppel, the Full Faith and Credit Act, the Rooker-Feldman Doctrine, and the objectives of judicial estoppel, Thomas is prohibited from making these contrary assertions.

    **(a)**     **Collateral Estoppel**

Thomas' claim to any property right in the Registry Funds is barred by the doctrine of collateral estoppel. It is well settled that collateral estoppel applies in bankruptcy cases. *See Grogan v. Garner*, 498 U.S. 279, 285, n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). In determining the effect of a state court judgment, federal courts refer to the particular state's law of preclusion. *See Pancake v. Reliance Ins. Co.* (*In re Pancake*), 1997 U.S. App. LEXIS 12991 (5th Cir. Tex. March 12, 1997) ("Because the judgment against Pancake was entered in Texas state court we apply the Texas law of issue preclusion."). Under Maryland law, a party is collaterally estopped from raising an issue "'[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'" *Murray International Freight Corp. v. Graham*, 315 Md. 543, 547, 555

A.2d 502 (1989) (quoting Restatement (Second) of Judgments § 27 (1982)). The principal elements of collateral estoppel require that: (1) there was a final judgment on the merits in prior litigation; (2) the party against whom collateral estoppel is asserted was a party or in privity with a party in the prior litigation; (3) the issue decided in the prior litigation is identical with the issue presented in the subsequent litigation; and (4) the issue actually litigated was essential to the judgment in the prior action (citations omitted). *See Pope v. Board of School Comm'rs*, 106 Md. App. 578, 594, 665 A.2d 713 (1995), *cert. denied*, 341 Md. 173, 669 A.2d 1361 (1996), *cert. denied*, 342 Md. 116, 673 A.2d 707 (1996); *see also, Esslinger v. Baltimore City*, 95 Md. App. 607, 627, 622 A.2d 774 (1993), *cert. denied*, *Baltimore City v. Esslinger*, 331 Md. 479, 628 A.2d 1066 (1993).

The Maryland Court found that (1) Thomas had been the trustee of the Registry Funds held on behalf of Robbins, (2) Thomas had a fiduciary and contractual obligation concerning his share of any recovery on the Freedom Companies' claims, and Robbins should have been paid $2,044,868 from the monies recovered from the federal government (part of which the Registry Funds formed), and (3) Thomas breached his fiduciary and contractual obligations by not directing this amount to be paid to Robbins. The Maryland Court's specific findings include:

- ". . . Thomas breached his fiduciary duty to Robbins when he deviated from the payment instructions set forth in the Cooperation Agreement and the February 3, 2004 Agreement."

- "Robbins and the other parties to the February 3, 2004 Agreement certainly entrusted Thomas with the $5 million judgment."

- ". . . Thomas clearly had a fiduciary duty to Robbins."

8

- "Thomas had a fiduciary duty to Robbins to obtain the consent of all parties involved in the agreement before distributing the proceeds of the $5 million judgment, which he neglected to do."

- "Likewise, per the agreement, he had a fiduciary duty to Robbins to distribute to Robbins Robbins' share of the $5 million judgment, which he also failed to do."

- "Furthermore, Robbins is entitled to recover his legal fees because 'an errant fiduciary may be surcharged for the legal expenses incurred in establishing his wrongdoing and obtaining recoupment.'" (citation omitted).

In support of the Maryland Court's findings, the Maryland Court issued a Clarifying Order on September 28, 2006 to make clear, *inter alia*, that the Robbins Action was now stayed as against Thomas and that it previously held that "Robbins is the owner of, and is entitled to be paid, the $1,924,449 (the "Registry Fund") currently on deposit in the Court's Registry as partial satisfaction of the Judgment reflected in the Order and Memorandum Opinion (as hereby clarified)."

Upon review of the entire record before me, all of the elements required to apply the doctrine of collateral estoppel exist here: (1) Thomas was a party to the Maryland Action, (2) Thomas fully participated in that action (3) the issue of ownership of the Registry Funds was actually litigated in the Maryland Action and (4) the issue of ownership is identical with the issue presented by Thomas in his petition, schedules and this contested matter, *i.e.*, the ownership of the Registry Funds. Accordingly, as it was previously determined by the Maryland Court that Thomas has no interest in the Registry Funds, that determination cannot be upset in

9

this Court. Accordingly, Robbins is the owner of the Registry Funds, and the Registry Funds are not property of Thomas' estate.

### (b) The Full Faith and Credit Act

The Full Faith and Credit Act provides that records and judicial proceedings of any court of any such state, territory or possession, "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738. Under the Full Faith and Credit Act, the bankruptcy court is required to give previous state court findings preclusive effect. *See, e.g.*, *In re Besing*, 981 F.2d 1488, 1496 (5th Cir. 1993), *cert. denied*, 510 U.S. 821 (1993).

Federal courts follow a two-step process to determine whether Section 1738 should apply in a particular case. *See Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 381 (1985), *reh'g denied*, 471 U.S. 1062 (1985) (citing *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461 at 466-68 (1982), *reh'g denied*, 458 U.S. 1133 (1982). First, a federal court must look to state law to determine the preclusive effect of the state court judgment. *Id.* Next, if state law affords the judgment preclusive effect, a federal court must determine whether Congress created an exception to Section 1738 in order to refuse to give a judgment the preclusive effect to which it is entitled under state law. *See id.*

Regarding the applicability of issue preclusion, the Maryland Court of Appeals has explained:

> if a proceeding between parties involves the same cause of action as a previous proceeding between the same parties, the principle of res judicata applies and all matters actually litigated or that could have been litigated are conclusive in the subsequent proceeding. If a proceeding between parties does not involve the

10

> same cause of action as a previous proceeding between the same parties, the principle of collateral estoppel applies, and only those facts or issues actually litigated in the previous action are conclusive in the subsequent proceeding.

*Mackall v. Zayre Corp.*, 293 Md. 221, 228, 443 A.2d 98 (1982) (internal citations omitted).

Since Maryland law gives judgments of its state courts preclusive effect, and since there are no exceptions to Section 1738, the Full Faith and Credit Act prohibits re-litigation of the issue of Thomas' interest in the Registry Funds.

The Maryland Court found that the money derived from Freedom NY's claims were held by Thomas as a fiduciary for Robbins, Robbins is the owner of the monies in the Registry Funds, and Thomas has no interest in those funds. Thomas breached his fiduciary duties to Robbins by withholding from Robbins his share of the funds obtained from Freedom NY's claims. Accordingly, to give full faith and credit to the Maryland Court's Memorandum Opinion, this Court holds that Thomas has no interest in the Registry Funds.

**(c)    The Rooker-Feldman Doctrine**

Under the Rooker-Feldman Doctrine, "lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment." *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998) (reviewing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)). The Doctrine has been narrowly construed since the original *Rooker* and *Feldman* decisions. See *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 283-84 (2005) ("Plaintiffs in *Rooker* and *Feldman* had litigated and lost in state court. Their federal complaints, we observed, essentially invited federal courts of first instance to review and reverse unfavorable state-court judgments. We

declared such suits out of bounds, i.e., properly dismissed for want of subject-matter jurisdiction."); *Lance v. Dennis*, 546 U.S. 459 (2006).

One of the main issues decided by the Maryland Court as made clear in the Clarifying Order was the determination of "to whom the Registry Funds belong." In the Maryland Court Thomas filed an interpleader action, which by definition is "[a]n equitable proceeding to determine the rights of rival claimants to property held by a third person having no interest therein." (citation omitted) BLACK'S LAW DICTIONARY 817 (6th ed. 1990). Thereby, Thomas has admitted that he has no interest in the Registry Funds. Furthermore, since the issue of ownership of the Registry Funds was fully and fairly litigated in the Robbins Action, this Court is bound by that determination under the Rooker-Feldman Doctrine.

**(d)** **Judicial Estoppel**

Judicial Estoppel is designed to prevent parties from taking one position in one court or legal proceeding and then going to another court and seeking relief based upon changing the underlying factual matrix. Under the doctrine, "a party is bound by his judicial declarations and may not contradict them in a subsequent proceeding involving same issues and parties." (citation omitted). BLACK'S LAW DICTIONARY 848 (6th ed. 1990). The Second Circuit explained in *Bates v. Long Island Railroad Co.*, 997 F.2d 1028, 1037-38 (2d Cir. 1993), *cert. denied*, 510 U.S. 992 (1993), *superceded by statute as stated in Fedro v. Reno*, 21 F.3d 1391 (7th Cir. 1994):

> The doctrine of judicial estoppel prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by him in a prior legal proceeding.
>
> \* \* \*
>
> [T]here are two distinct objectives behind judicial estoppel, both of which seek to protect the judicial system. First, the doctrine seeks to preserve the sanctity of the oath by demanding absolute truth and consistency in all sworn positions. Preserv-

12

> ing the sanctity of the oath prevents the perpetuation of untruths which damage
> public confidence in the integrity of the judicial system. Second, the doctrine
> seeks to protect judicial integrity by avoiding the risk of inconsistent results in
> two proceedings.
>
> * * *
>
> First, the party against whom the estoppel is asserted must have argued an
> inconsistent position in a prior proceeding; and second, the prior inconsistent
> position must have been adopted by the court in some manner.
>
> * * *
>
> The Second Circuit follows the majority view with respect to the second element
> of judicial estoppel. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v.
> Georgiadis*, 903 F.2d 109, 114 (2d Cir. 1990).
>
> Under the minority view, judicial estoppel has been applied notwithstanding that
> a party was not successful in asserting its position in the prior judicial proceeding,
> if the court determines that the alleged offending party engaged in 'fast and loose'
> behavior which undermined the integrity of the court." *See Stevens Technical
> Services, Inc. v. SS Brooklyn*, 885 F.2d 584, 589 (9th Cir. 1989).

*Bates v. Long Island Railroad*, 997 F.2d at 1037-38 (some internal citations and footnotes omitted). *See also*, *Mishkin v. Ensminger* (*In re Adler Coleman Clearing Corp.*), 218 B.R. 689, 698 (Bankr. S.D.N.Y. 1998).

The doctrine of judicial estoppel . . . "applies only if the party against whom the estoppel is claimed actually obtained a judgment as a result of the inconsistent position." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis*, 903 F.2d 109, 114 (2d Cir. 1990); *see also*, *Konstantinidis v. Chen*, 626 F.2d 933, 939 (D.C. Cir. 1980) ("success in the prior proceeding is clearly an essential element of judicial estoppel"). In his Interpleader Action based upon Thomas' sworn statements that he had no interest in the Registry Funds**,** Thomas did succeed in his motion to deposit monies into the Maryland Court's Registry to determine the ownership of the Registry Funds. Now, in the face of a prior state court adjudication as to the ownership of the Registry Funds and prior representations regarding the ownership position of Thomas (for

13

example, in the Interpleader Action filed by Thomas), Thomas is now prohibited under the objectives[1] of the doctrine of judicial estoppel from presenting this Court with a different position.

## II. **Estate property under 11 U.S.C. Section 541(a) and (d)**

Section 541(a) of the Bankruptcy Code provides that the "estate is comprised of . . . the following property wherever located and by whomever held: (1) . . . all legal or equitable interest in property as of the commencement of the case." The Court must look to state law in order to determine a debtor's legal or equitable interest in property on the filing date. "The nature and extent of the debtor's interest in property is determined by applicable non-bankruptcy law." *In re Prudential Lines, Inc*. 928 F.2d 565, 569 (2d Cir. 1991), *cert. denied sub nom.*, *PSS S.S. Co. v. Official Comm. of Unsecured Creditors*, 502 U.S. 821 (1991) (citations omitted); *see also*, *In re Crysen/Montenay Energy Co. v. Esselen Assocs., Inc.* (*In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098, 1101 (2d Cir. 1990) .

The Maryland Court found that monies obtained from the Freedom Companies' claims were held by Thomas as a custodian for Robbins. The Court found that Thomas "had a fiduciary duty to Robbins to distribute to Robbins Robbins' share of the $5 million judgment" which was breached by withholding Robbins' share of the judgment. Accordingly, Robbins is the owner of the Registry Funds and Thomas has no interest in those funds. Therefore, on the filing date, Thomas held no interest in the Registry Funds and in accordance with Section 541(a), the Registry Funds are not property of Thomas' bankruptcy estate.

---

[1] (1) to preserve the sanctity of the oath by demanding absolute truth and consistency in all sworn positions and (2) to protect judicial integrity by avoiding the risk of inconsistent results in two proceedings.  See *Bates v. Long Island Railroad Co.*, 997 F.2d at 1037-38.

14

> Section 541(d) provides in pertinent part:
>
> [p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a) (1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d). It is a "well-settled principle that debtors do 'not own an equitable interest in property . . . [they] hold [] in trust for another,' and that therefore funds held in trust are not 'property of the estate.'" *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95 (3d Cir. 1994) (footnote omitted) (quoting *Beiger v. I.R.S.*, 496 U.S. 53, 59 (1990)). Accordingly, the Registry Funds which were held by Thomas as custodian are not property of Thomas' estate.

### III. Good faith filing/bad faith filing

The Bankruptcy Code's principal purpose is to provide a "fresh start" to "honest but unfortunate" debtors. *Marrama v. Citizens Bank of Massachusetts*, ___ U.S.___ , 127 S.Ct. 1105, 1107 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 286 (1991). Thomas' actions and submissions on their face present a litany of factors which perhaps individually, but certainly as a whole, fly in the face of the spirit of the Bankruptcy Code and should not be afforded its protection. Courts have considered "lists" of factors under the "totality of circumstances" to determine whether a filing was in "bad faith" such that cause exists to warrant dismissal. *See In re O'Brien*, 328 B.R. 669, 675 (Bankr. W.D.N.Y. 2005); *Ross et al. v. Tognetti* (*In re Tognetti*), No. 03-37171, 2006 WL 2587544, *14 (Bankr. S.D.N.Y. June 21, 2006). Factors which this Court considered, while not exclusive, include:

- The bankruptcy case was commenced immediately following the entry of the Maryland Court's decision.

- Thomas did not file his petition because he is in financial distress.

- Thomas told this Court that the Funds derive from a settlement that was not previously disclosed to the Maryland Court.

- Thomas does not work.

- Thomas apparently lives on a 42-foot yacht expense-free.

- Thomas' children and others lend Thomas money for his litigation and living expenses.

- Thomas did not list a proper mailing address on his petition.

- Thomas' petition does not list any ordinary or customary debts. For example, Thomas lists no telephone, electric, gas, water, credit card debt, or bank loans.

- Thomas lists the IRS and the New York State Department of Taxation and Finance as his creditors. However, those debts apparently stem from Freedom NY's withholding taxes. While Thomas was the responsible party for those obligations, those debts are over fifteen years old and arguably may be not collectible. In fact, it is argued that Thomas may have harmed the estate if it could be deemed that he waived any applicable statutes of limitation defenses.

- Thomas and his attorneys may have used threatening tactics to urge Robbins into accepting a settlement offer.

- Thomas did not list all of his creditors per testimony before the Chapter 13 trustee.

All of these bullet points support the conclusion that Thomas has filed this bankruptcy case for no legitimate bankruptcy purpose. Combined they frame a classic picture of a bad faith filing. This bankruptcy case was not commenced to obtain protection from Thomas' creditors because

16

no recovery was being sought on his ancient debts at the time of filing nor had any recovery been sought for years. The sole reason was to prevent payment to Robbins of the monies awarded by the Maryland Court which Thomas had placed in the Maryland Court Registry for distribution. Accordingly, this bankruptcy case is dismissed with prejudice such that Thomas will be prohibited from filing another bankruptcy case for one year from the date of this Order with Memorandum unless he obtains prior relief from this Court.

### IV. Violation of the automatic stay, enjoining further actions by Thomas and sanctions

Robbins argues that if the Registry Funds were part of Thomas' estate, then actions taken by Thomas to revive tax liabilities to the IRS and the New York State Department of Taxation and Finance and to cause these agencies to attach liens to the Registry Funds violate the automatic stay. Robbins correctly points out that this Court has previously noted that "[b]y its terms, the automatic stay under Section 362(a) is 'applicable to all entities.' It is important to emphasize that the automatic stay is intended for the protection not only of the debtor, but for the benefit all creditors as well." *In re Flores*, 291 B.R. 44, 50 (Bankr. S.D.N.Y. 2003) (citations omitted), *superceded by statute as stated in In re Elmendorf*, 345 B.R. 486, 500-01 (Bankr. S.D.N.Y. 2006). This is a Chapter 7 case in which it is the duty of the Chapter 7 trustee to administer and decide whether to oppose claims. *See Edmonston v. Murphy* (*In re Edmonston*), 107 F.3d 74, 76-77 (1st Cir. 1997) (". . . the statutory duty to administer nonexempt property of the chapter 7 estate implicitly empowers the trustee to screen and oppose exemption claims which may not be allowable."); *see also*, 11 U.S.C. § 704. By usurping the Chapter 7 trustee's role, it may be that Thomas has violated the automatic stay or, at a minimum, is threatening harm to Thomas' estate. *See In re Mid-City Parking*, Inc. 332 B.R. 798, 808 (Bankr. N.D. Ill. 2005) (citations omitted).

17

Since this Court is dismissing this case as of the date of this Order with Memorandum, the Court deems it not necessary to function on these requests for relief. If it turns out that damage has been done to Thomas' estate by Thomas' actions regarding these tax liabilities, then Robbins may reopen this matter to determine the extent of the damages caused and whether further sanctions are warranted.

### V. **Thomas' motion for contempt and sanctions**

Upon the record before the Court, no sanctions are warranted against Robbins for violation of the automatic stay. While it is true that a judgment was entered against Thomas post-petition, it is apparent from the record that Robbins took all reasonably necessary steps to stay the Maryland Court action as against Thomas and all reasonably necessary steps to correct the erroneous judgment entered against Thomas once discovered. Upon the filing of Thomas' bankruptcy petition, Robbins moved to sever Thomas from the Robbins Action. On September 28, 2006 an order was signed staying the Robbins Action as to Thomas. A Clarifying Order was signed on September 28, 2006 restating, *inter alia*, that the Robbins Action was stayed as against Thomas. On November 9, 2006 Robbins, through local counsel in New Jersey, filed a certification in support of the Registration of Foreign Judgment which specifically stated "there exists no stay of enforcement of the judgment except as to defendant Henry Thomas." On December 11, 2006 the Superior Court of New Jersey entered the Clarifying Order in exactly the same form as entered by the Maryland Court. However, apparently due to a clerical error of the Superior Court of New Jersey, a judgment was entered against Thomas. The record reflects that Robbins took immediate and persistent action to correct the error. Under these circumstances, which Thomas has not controverted, there exists no basis to find Robbins in violation of the automatic stay.

To the extent it could possibly be deemed necessary to vacate the automatic stay in order that the post-petition Maryland Court orders and companion orders of the Superior Court of New Jersey be docketed, this Court vacates the automatic stay *nunc pro tunc* to accomplish these events.

## **ORDER**

Based upon the foregoing, it is hereby

**ORDERED** that the $1,924,449 presently located in the Maryland Court otherwise herein above referred to as the "Registry Funds" is not property of the bankruptcy estate of Thomas in case no. 06-22557; and it is further

**ORDERED** that Robbins did not violate the automatic stay but, to the extent it may be deemed necessary, the automatic stay is hereby vacated *nunc pro tunc* to the filing date of the bankruptcy petition; and it is further

**ORDERED** that Thomas' motion for contempt and sanctions against Robbins is denied;  and it is further

**ORDERED** that case no. 06-22557 is hereby dismissed with prejudice as of the date of this Order and Thomas is prohibited from filing another bankruptcy petition in any court for one year from the date of this Order without first obtaining leave from this Court to do so.

Dated: White Plains, NY
       June 4, 2007

/s/ Adlai S. Hardin, Jr.
U.S.B.J.